UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CX INC., <br><br>                     Plaintiff, <br>     v. <br><br> CLARINGTON CAPITAL GROUP LLC, <br><br>                     Defendant. | Case No.: CV-11-05191 PSG <br><br> **ORDER TO REASSIGN CASE TO A U.S. DISTRICT JUDGE; REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT** <br><br> **(Re: Docket No. 17)** |

Plaintiff CX Inc. ("CX") applies for entry of default judgment by the court against Defendant Clarington Capital Group LLC ("Clarington"). CX served Clarington with the summons and complaint but Clarington has never appeared, or otherwise responded to the complaint.[1] Having reviewed the papers and considered the arguments of counsel, the undersigned hereby orders that this case be reassigned to a U.S. District Judge with a recommendation that CX's application for entry of default judgment be GRANTED.[2]

---

[1] *See* Docket No. 10.

[2] While Clarington has not appeared or consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c)(1), it has been served. As a result, it is considered a party and its consent is required for this court to enter a dispositive ruling. *Cf. Neals v. Norwood*, 59 F.3d 530, 531 (5th Cir. 1995) (holding that magistrate judge had jurisdiction to dismiss prison inmate's action under 42 U.S.C. § 1983 as frivolous without consent of defendants because defendants had not been served yet and therefore were not parties).

1

Case No.: CV-11-05191 PSG
REQUEST FOR REASSIGNMENT; REPORT AND RECOMMENDATION

# I. BACKGROUND

## A. Procedural History

On October 24, 2011, CX filed a complaint against Clarington alleging breach of contract and seeking judgment awarding specific performance, pre-judgment interest, and attorneys' fees.[3] On October 28, 2011, Clarington was served with the summons and complaint.[4] Clarington has not answered, or otherwise responded to, the complaint.[5] Moreover, Clarington has neither appeared nor ever contacted CX.[6] On December 16, 2011, CX requested entry of default against Clarington.[7] On December 21, 2011, the Clerk of the Court entered default against Clarington.[8] On February 28, 2012, CX moved for default judgment by the court against Clarington.[9]

## B. Factual History

CX is a privately-held corporation and its stock is not publicly traded.[10] On April 8, 2011, CX and Clarington executed a Series B Preferred Stock Purchase Agreement (the "SPA") wherein Clarington agreed to purchase 1,200,000 shares of CX's Series B Preferred Stock for a total purchase price of $1.5 million. Clarington was to pay $600,000 of the total purchase price on June 30, 2011, and the remaining balance on July 13, 2011. Clarington failed to tender any payment whatsoever.

---

[3] *See* Docket No. 1.

[4] *See* Docket No. 10.

[5] *See* Docket No. 17 at 6.

[6] *See* Docket No. 17 at 2.

[7] *See* Docket No. 12.

[8] *See* Docket No. 13.

[9] *See* Docket No. 17.

[10] *See* Docket No. 17 at 3.

## II.  LEGAL STANDARDS

After entry of default, district courts are authorized to grant default judgment, so long as the judgment does not "differ in kind from, or exceed in amount, what is demanded in the pleadings."[11] Entry of default judgment is within the court's discretion,[12] and is governed by the following factors: (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) prejudice to plaintiff; (4) the sum of money at stake; (5) potential disputes concerning material facts; (6) whether default was due to excusable neglect; and (7) the Federal Rules of Civil Procedure's strong policy favoring decisions on the merits.[13] In considering the *Eitel* factors, all factual allegations in the complaint are taken as true, except for those relating to damages.[14]

## III.  DISCUSSION

### A.   Specific Performance

CX offered its stock to Clarington and a select handful of other investors for a private Series B financing round. The terms of the SPA are clear: Clarington agreed to purchase 1,200,000 shares of CX stock for a total purchase price of $1.5 million. CX contends that because the nature of the stock is unique, the remedy at law is inadequate and the court may award specific performance. Under Delaware law, specific performance of a stock purchase agreement is available only when the remedy at law is inadequate.[15] A remedy at law is inadequate if the stock is not generally available in the market place, it is unique, or has unique value to the purchaser.[16]

The court agrees with CX that because the stock is not publicly traded, or its value is not otherwise ascertainable, CX's remedy at law is inadequate. Because CX can demonstrate that the

---

[11] Fed. R. Civ. P. 54(c); *see also* Fed. R. Civ. P. 55.

[12] *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

[13] *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

[14] *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

[15] *Hazen v. Miller*, 1991 Del. Ch. LEXIS 191, at *15 (Nov. 18, 1991). *See also Lineberger v. Welsh,* 290 A.2d 847, 848 (Del. Ch. 1972).

[16] *Id*. at *16.

remedy at law is inadequate, the court recommends that CX's request for specific performance be granted.

### B.  Attorneys' Fees

Virtually all of the *Eitel* factors weigh in favor of granting attorneys' fees. The first three factors, which relate to the merits of CX's claims, undoubtedly favor CX. As for the fourth factor, CX seeks damages totaling $35,627.18. In the SPA, Clarington agreed to pay all of CX's legal expenses and reasonable attorneys' fees that would have been incurred to enforce the agreement.[17] CX has provided a declaration and its invoices to support the fees sought.[18] Under these circumstances, the court finds that an award of attorneys' fees is reasonable and recommends that they be granted in their entirety.

As for the fifth factor, there are likely no disputes as to the material facts because Clarington did not answer, or otherwise respond to, the complaint. As for the sixth factor, it does not appear that default is due to excusable neglect. CX served Clarington with the complaint and summons. And as to the last factor, while the Federal Rules strongly favor decisions on the merits, Clarington has been aware of the pending action since October 28, 2011. Clarington elected not to answer, or otherwise respond to, the complaint. A decision on the merits is not possible.[19] Notwithstanding the court's general reluctance to enter default judgment, the court recommends that one be entered here.

### C.  Prejudgment Interest

Because the court recommends that default judgment be granted, CX is entitled to prejudgment interest for the amount sought. The court recommends that prejudgment interest consistent with Delaware's statutory legal rate be granted on the two installments that Clarington agreed to pay: (1) $600,000 on June 30, 2011; and (2) $900,000 on July 13, 2011.

---

[17] *See* Docket No. 17 Ex. 1 at ¶ 6.12.

[18] *See* Docket No. 17, Ex. 2.

[19] *See Eitel*, 782 F.2d at 1472.

4
Case No.: CV-11-05191 PSG
REQUEST FOR REASSIGNMENT; REPORT AND RECOMMENDATION

## IV.  CONCLUSION

The court recommends that CX's motion for entry of default judgment be granted against Clarington for specific performance, prejudgment interest, attorneys' fees and costs totaling $35,627.18.

**IT IS SO RECOMMENDED.**

Dated:  9/17/2012

*[signature]*
PAUL S. GREWAL
United States Magistrate Judge